**In the United States District Court
for the District of Kansas**

---

Case No. 2:24-cv-02002-TC-RES

---

ESTATE OF FRANKLIN BRISBIN JR.,

*Plaintiff*

v.

DANNY SMITH, ET AL.,

*Defendants*

---

**MEMORANDUM AND ORDER**

The Estate of Franklin Brisbin Jr. sued Sheriff Danny Smith in his individual capacity and Deputies John Does 1-5 in their individual and official capacities for being deliberately indifferent to Brisbin's medical needs under the Fourteenth Amendment. Doc 1. Smith now moves to dismiss under Fed. R. Civ. P. 12(b)(6). Doc. 5. For the following reasons, Smith's motion is granted.

**I**

**A**

A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining

1

allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation with multiple defendants).

Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). But a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

**B**

Brisbin was arrested in October 2022 in Pittsburg, Kansas. Doc. 1 at ¶ 6.[1] He was subsequently transported to the Crawford County Jail. *Id.* Upon arrival at the jail, Brisbin was suffering from a medical emergency. *Id.* at ¶ 8. He could not walk into the jail on his own and was instead dragged by his arms. *Id.* at ¶ 7. At the time of booking, he was

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

unable to stand, made nonsensical noises, and was suffering from bowel and bladder incontinence. *Id.* at ¶ 9.

After booking, Brisbin allegedly laid on a jail mat on the ground for two days, defecating on himself. *Id.* at ¶ 10. Eventually, Brisbin was transferred by ambulance from the Crawford County Jail to Girard Medical Center in Girard, Kansas. *Id.* at ¶ 11. Girard Medical Center assessed Brisbin and concluded that he was severely septic such that he had an altered mental state. *Id.* at ¶ 12. Then, on October 15, 2022, Brisbin was life-flighted by LifeFlight Eagle to the University of Kansas Hospital, where it was concluded that Brisbin had developed pressure wounds to his right heel, left heel, coccyx, left scapula, and right scapula from his time laying on the concrete floor of the Crawford County Jail. *Id.* at ¶ 14.

While in the hospital, Brisbin's condition never improved; he died on October 27, 2022. *Id.* at ¶¶ 15, 16. Brisbin was thirty-three years old at the time of his death. *Id.* at ¶ 17.

After his death, the Estate of Franklin Brisbin Jr. was formed in Bourbon County, Kansas District Court. Doc. 1 at ¶ 1. The Estate then sued by way of 42 U.S.C. § 1983. Doc. 1. They named only one natural person, Sheriff Danny Smith, and five unnamed John Doe officers, alleging these defendants violated Brisbin's Fourteenth Amendment right to medical care. Doc. 1. After filing, Smith moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim, specifically invoking the doctrine of qualified immunity. Doc. 5.

## II

Smith argues that the Complaint fails to allege any act or omission connecting Smith to Brisbin aside from the fact that, as Sheriff, he was responsible for the operations of the Jail. Doc. 5 at 2–4. That contention is accurate: there are no plausible allegations of fact suggesting that Smith was aware of Brisbin's detention, much less engaged in any act or omission that caused Brisbin's alleged deprivation. As a result, Smith's motion is granted.

### A

Invoking 42 U.S.C. § 1983, the Estate claims that Smith violated Brisbin's constitutional rights. *See generally* Doc. 1. Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or

3

causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023). To state a viable Section 1983 claim, a plaintiff must establish that a person acting under color of state law caused him or her to be deprived of a right secured by the Constitution or laws of the United States. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

Following *Twombly* and *Iqbal*, the Tenth Circuit observed that it is "particularly important" that a "complaint make clear exactly who is alleged to have done what to whom," especially in complex Section 1983 cases containing multiple claims against several defendants with varying claims to immunity. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008); *see also Bledsoe v. Carreno*, 53 F.4th 589, 606–07 (10th Cir. 2022) (same). Part of the rationale for this rule is to allow defendants such as Smith to "ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250.

The Tenth Circuit has held that there is "a need for careful attention to particulars, especially in [Section 1983] lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). This means plaintiffs are required to make it "clear exactly *who* is alleged to have done *what* to *whom*," as distinguished from collective allegations. *Id.* (citation and internal quotation marks omitted) (emphasis in original). Those allegations are needed to satisfy the causation element of Section 1983 claim. *See Hall*, 584 F.3d at 864; *see also Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Foot v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). As such, "[a] plaintiff in a § 1983 action must allege that each defendant is subject to personal liability based on his [or her] own actions." *Cuervo v. Sorenson*, 112 F.4th 1307, 1314 (10th Cir. 2024).

**B**

**1.** The Complaint's allegations of wrongful conduct are, generally speaking, sparse. And it fails to identify Smith's individual acts or omissions. In relevant part, the Complaint alleges that Smith is "responsible

for the operation of the Crawford County Jail." Doc. 1 at ¶ 21. It fails to allege Smith specifically had direct knowledge of Brisbin, opting instead to generally suggest that "Defendants actually knew of [Brisbin's] objectively serious medical needs," *id.* at ¶ 29, "[k]nowingly failed to allow [Brisbin] access to appropriate medical services and care for his medical needs," *id.* at ¶ 29.b., "[k]nowingly failed to seek access for appropriate medical needs for [Brisbin]," *id.* at ¶ 29.c., and "[k]nowingly failed to respond to [Brisbin] in a timely manner," *id.* at ¶ 29.d. Aside from these broad and generalized assertions, the Complaint fails to allege any basis to believe that Sheriff Smith, the only individually named defendant, had any knowledge of Brisbin's presence in the Jail other than that he was generally "responsible for the operation of the Crawford County Jail." *Id.* at ¶ 21. The strongest case that can be made against Smith with these allegations is that someone at the Jail knew something and, as a result, Sheriff Smith is responsible for their collective knowledge, acts, or omissions because he is ultimately responsible for the operation of the Jail.

These allegations are insufficient as a matter of law. There are no well pled facts in the Complaint to suggest that Smith personally participated in any events related to Brisbin's detention. A viable complaint must "identify specific actions taken by [Smith] that could form the basis of [a deliberate indifference] claim." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998). There are none. For example, it never alleges that Smith had contact with Brisbin, let alone contact that would give rise to a plausible inference that Smith personally participated in the constitutional violation alleged by the Estate. In fact, it never expresses a single affirmative act or omission by Smith. And it never articulates any facts to suggest that Smith knew who Brisbin was, that Brisbin was in the Jail, or that Smith had actual knowledge of Brisbin's medical condition. That means the Complaint fails to state a claim as a matter of law. *See, e.g.*, *Brown*, 662 F.3d at 1165 (holding that a complaint, which failed to specifically allege how the defendant acted or that the defendant had knowledge in a Section 1983 suit, was insufficient under relevant Tenth Circuit precedent); *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010) (holding that where the record lacked evidence suggesting personal involvement in allegedly unlawful activities in a Section 1983 case was insufficient on summary judgment).

**2.** There are ways to impose liability against state actors that did not directly participate in the deprivations. *See generally Dodds v.*

5

*Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). But the Complaint fails to allege any of them.

Generally speaking, respondeat superior is insufficient to impose liability. *Brown*, 662 F.3d at 1164. That, however, is what the Estate appears to envision as the basis for liability. This will not do. *Gagan v. Norton*, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994) ("The plaintiff must establish some 'affirmative link' between the deprivation and personal control by the supervisor in order to establish the supervisor's liability.") (citation omitted). In some situations, supervisory liability, as compared to respondeat superior, is a recognized basis to succeed in a Section 1983 suit. *See Pahls*, 718 F.3d at 1225 (explaining that government officials may be held responsible under a theory of supervisory liability). But even that requires an allegation that a defendant did something to cause a plaintiff to be subjected to an unconstitutional deprivation, such as by promulgating, creating, or implementing a policy that caused the complained of constitutional harm with the culpable state of mind. *See id.* (outlining what must be shown for a plaintiff to succeed in a Section 1983 suit based on supervisory liability); *Cox v. Glanz*, 800 F.3d 1231, 1248–49 (10th Cir. 2015) (explaining the requisite legal contours of a supervisory-liability theory).

These elements have not been alleged in the Complaint. For example, the Estate does not claim that Smith promulgated, created, implemented, or possessed responsibility for the continued operation of any policy that caused the complained of constitutional harm. Therefore, the Complaint also fails to make any plausible claim of supervisory liability sufficient to survive Smith's motion to dismiss. *See, e.g.*, *Brown*, 662 F.3d at 1165 (holding that a complaint was insufficient where it "fail[ed] on the first step because it does not even mention the Policy," like here); *see also Smith v. Allbaugh*, 987 F.3d 905, 911–12 (10th Cir. 2021) (concluding that the plaintiff failed to assert sufficient facts against the director and warden of a correctional facility).

**3.** Finally, the Estate fails to present any colorable counterarguments. The Estate attempts to refute Smith's arguments regarding whether a claim has adequately been pled in its response. *See* Doc. 6 at 1–2. In essence, the Estate argues that the Complaint makes clear that Smith was responsible for the operation of the Crawford County Jail, and that, because of the various issues Brisbin faced, Smith "failed to properly treat Decedent's medical condition," "denied the decedent's constitutional right to antibiotics," and that "decedent ultimately died as a result of [Smith's] actions." *Id.* at 2. The problem, however, is that

the Complaint does not actually list *any* actions taken by Smith suggesting that he treated—properly or otherwise—Brisbin. In other words, the Complaint still fails to "identify specific actions taken by [Smith] that could form the basis of [a deliberate indifference] claim." *Tonkovich*, 159 F.3d at 532; *Brown*, 662 F.3d at 1165 (holding that a complaint which failed to specifically allege how the defendant acted or that the defendant had knowledge in a Section 1983 was insufficient under relevant Tenth Circuit precedent).

### III

For the foregoing reasons, Smith's Motion to Dismiss, Doc. 5, is GRANTED.

It is so ordered.

Date: January 31, 2025       s/ Toby Crouse  
    Toby Crouse  
    United States District Judge